## Commonwealth v. Gardner

*J. Manley Robbins,* for Commonwealth.
*Donald A. Lewis,* for defendant.

KREISHER, P. J., December 7, 1950.—For many years defendant has been conducting a beauty parlor in the residential section of the Borough of Danville, and in conjunction therewith has kept and maintained a dog kennel for both breeding and boarding purposes. On June 15, 1949, Arthur S. Cooke and wife moved into the residence located at 405 West Mahoning Street, which property adjoins the property of defendant, and shortly thereafter Mr. Cooke complained to the borough council with regard to the dogs kept and maintained by defendant upon her premises.

On February 1, 1946, the Council of the Borough of Danville enacted an ordinance by virtue of the police power conferred upon it in the General Borough Code regulating the health and safety in the borough. Section 5 of the ordinance provided as follows:

"The keeping of pigs shall not be permitted in the Borough of Danville. All dog pens shall be kept clean and shall be thoroughly cleaned out and disinfected at least once every three months. The keeping of noisy dogs or dogs that habitually bark at night is hereby declared to be a nuisance and a violation of this Ordinance."

In regard to the complaints of Mr. Cooke, the borough council directed the health officer of the borough to make an investigation of the complaint, and he reported that the condition of the kennels was such that he was unable by his authority to abate the kennels because they did not, in his opinion, constitute a nuisance or violate the ordinance of the borough as it then stood. Thereupon, on September 2, 1949, in pursuance of Mr. Cooke's continued complaints, the borough council amended section 5 of the ordinance above quoted by adding thereto the following:

"No dog kennels may be kept in the Borough of Danville, and for the purposes of this Ordinance the keeping of more than six (6) dogs over the age of six (6) months shall be considered the keeping of a dog kennel and shall not be permitted."

On February 6, 1950, the Chief of Police of the Borough of Danville visited the home of defendant, at which time he found 11 dogs over six months old and two litters of puppies under six months of age. He thereupon proceeded to the office of the justice of the peace and laid an information charging defendant with the violation of the ordinance. On February 10, 1950, defendant appeared before the justice and pleaded not guilty and waived further hearing. The transcript then sets forth: "Decision is withheld for a period of five days." On February 15, 1950, the justice of the peace found defendant guilty, imposed a fine of $10 and costs by virtue of defendant having five dogs over the age of six months in excess of the allowable number of dogs as provided in said ordinance.

On February 20, 1950, defendant filed a petition for the allowance of an appeal to the court of quarter sessions, and provided bond in the amount of $50, the basis of the appeal being that the provisions of the ordinance making it illegal to keep more than six dogs over the age of six months, are illegal, invalid and

unconstitutional, and further, that the prosecution was laid in the name of the Commonwealth of Pennsylvania against defendant for a violation of a borough ordinance instead of in the name of the Borough of Danville against defendant, as required by law.

The court allowed the appeal, and on June 8, 1950, entered into a hearing de novo. On July 13, 1950, counsel for the borough filed a petition with the court to quash the appeal for the reason that the appeal was taken to the court of quarter sessions instead of in the court of common pleas, as required by the Act of April 17, 1876, P. L. 29, 19 PS §1189, as amended, which provides:

"In all cases of summary conviction in this Commonwealth, before a magistrate or court not of record, either party, even though any fine imposed has already been paid, may, within five days after such conviction, appeal to the court of quarter sessions of the county in which such magistrate shall reside or court not of record shall be held, upon allowance of the said court of quarter sessions or any judge thereof, upon cause shown; and either party may also appeal from the judgment of a magistrate or a court not of record, in a suit for a penalty, to the court of common pleas of the county in which said judgment shall be rendered, upon allowance of said court, or any judge thereof, upon cause shown: . . ."

The court permitted the petition to quash the appeal to be filed and issued a rule to show cause on defendant why the same should not be allowed. Counsel for the respective parties then requested that the testimony be transcribed, and that they be permitted to orally argue all of their respective positions at the same time, which argument the court heard on July 27, 1950.

The first question involved in this case is whether or not the petition to quash the appeal should be sus-

tained, for the reason that the appeal was taken to the court of quarter sessions instead of the court of common pleas, since the prosecution was instituted for a violation of a borough ordinance, and, therefore, for the collection of a penalty imposed by the ordinance. The penal provisions of the ordinance are contained in section 40 thereof, which provides as follows:

"Any person, partnership, firm or corporation violating any of the provisions of this ordinance shall upon conviction thereof in a summary proceeding before any Justice of the Peace, or Magistrate be subject to pay a fine of not more than one hundred ($100) dollars and costs for each offense, and in default of the payment of said fine and costs of prosecution shall be imprisoned for a period of not exceeding thirty (30) days."

We are inclined to agree with counsel for the borough that in most cases an appeal from the prosecution under a borough ordinance by virtue of the Act of 1876, as amended, should be taken to the court of common pleas. However, where the prosecution is instituted by information and warrant, which is now permitted by the Act of May 4, 1927, P. L. 519, 53 PS §15193, and where a justice of the peace exercises criminal jurisdiction, then an appeal will lie to the quarter sessions court. We further note from the very terms of the penal provisions of this ordinance that it calls for a conviction in a summary proceeding, and provides for a fine and imprisonment, so that for all intents and purposes the penal provisions of the ordinance are strictly criminal in nature, and do not provide for a penalty as contemplated in the above quoted Act of 1876, as amended. The borough councils under the General Borough Law under the Act of July 10, 1947, P. L. 1621, sec. 40, 53 PS §13346, have the right "to impose fines", so that from the ordinance itself

and from the manner in which this prosecution was instituted, we conclude that it is a criminal prosecution rather than a civil suit for a debt, and therefore the appeal was properly taken to the court of quarter sessions, and the petition to quash the appeal and the rule issued thereon must be discharged and dismissed. See Commonwealth of Pennsylvania v. Harper, 50 Montg. 300, wherein Knight, P. J., in writing the opinion of the court on page 301 stated, with respect to an appeal taken from a prosecution upon a zoning ordinance, as follows:

"In the present case, the justice elected to exercise the criminal jurisdiction of his office. The proceeding was begun by information, warrant and arrest, and was carried forward to a hearing, and, by inference, a conviction for a fine of $25 was imposed. It was therefore a case of summary conviction, and the appeal lies to the Quarter Sessions, and not to the Common Pleas."

The first contention of defendant that the appeal must be sustained is that the prosecution was instituted in the name of the Commonwealth of Pennsylvania instead of the Borough of Danville. What we have already said with regard to the appeal being taken to the court of quarter sessions rather than to the court of common pleas is, we believe, pertinent and applicable to the contention of defendant in regard to the caption of the case. Since we find this to be a criminal prosecution for the violation of this ordinance rather than a civil suit for the collection of a penalty, it is our opinion that the caption of the case, if not proper, is at least an amendable error, and if it is necessary to the final determination of this case, the amendment is allowed. We note further in this regard that this contention standing alone could not be the basis for the allowance of an appeal, nor could it be the basis to sustain an appeal, because

this error, if it be one, is purely one of form and could be raised only upon certiorari, in which proceeding the court has the right to examine the record for errors of form. However, it is a well-settled principle of law that where a defendant appears before a justice and enters into a hearing, or waives that hearing and then appeals from the decision of the justice, that defendant waives all defects and error of form, and they cannot be inquired into or passed upon on appeal. It is stated in the case of Commonwealth v. Palms, reported in 141 Pa. Superior Ct. 430, in an opinion by Keller, P. J., on page 438:

"It will be noted that the defendant did not proceed by way of certiorari to the court of *common pleas;* hence we are not concerned with alleged errors in the form of the complaint or the transcript of the justice. He chose the remedy by appeal to the court of quarter sessions, which constituted a waiver of *formal* defects in the proceedings before the justice."

The second contention of defendant for sustaining her appeal brings up a more serious question of whether or not a municipality may in the exercise of its general police power for the health and welfare of the municipality fix an arbitrary number of dogs to be a nuisance per se and illegal. It is our opinion that section 5 of the ordinance as originally enacted was a proper exercise of the police power, wherein it provided that "The keeping of noisy dogs or dogs that habitually bark at night is hereby declared to be a nuisance and a violation of this Ordinance". To determine whether or not the ordinance was violated would be a question of fact that would have to be proven upon hearing, and it has generally been held that whether or not an act constitutes a nuisance must be judicially determined in each particular case: 20 R. C. L. 376. However, by the amendment to the ordinance above quoted, the borough council has ordained that

the keeping of more than six dogs over six months of age is a nuisance per se, illegal and a violation of the ordinance. We do not believe that the borough council or the court has the power or the authority to determine that more than a certain number is a nuisance per se, and less than that number is a nuisance only upon proof of the same being a nuisance. In other words, it is our opinion that the borough council, in the exercise of its police power may not unreasonably and arbitrarily prohibit things which were not nuisances at common law, and their declaration in an ordinance that a thing is a public nuisance does not make it so, if it is not a nuisance in fact: City of Philadelphia v. Lyster, 3 Pa. Superior Ct. 475. In 2 Am. Jur. 717, it is stated:

"Ordinances regulating or forbidding the keeping of more than a certain number of animals have, however, usually been held invalid."

In 66 C. J. S. §786, it is stated:

"The mere possession or keeping of dogs, or the maintenance of a dog kennel, does not constitute a nuisance, or a nuisance per se, since it is a lawful business. The question whether the keeping of dogs, or the maintenance of a dog kennel, constitutes a nuisance depends on the circumstances, extent of annoyance and discomfort caused, and whether there is a continuous or recurring injury. Thus, the keeping of dogs or the maintenance of a dog kennel may constitute a nuisance, as, for instance, where dogs are kept in an unsanitary manner to the annoyance and discomfort of the neighborhood. Furthermore, the keeping of dogs, or the maintenance of a dog kennel, may constitute a nuisance if it is done in a residential locality and the noise made by the dogs disturbs the neighborhood, since the noise made by dogs, by barking and howling, may amount to a nuisance. . . .

"While the breeding of animals is a lawful business, and one which may be properly carried on for public benefit and private gain, it does not justify conducting such business so as to create a nuisance. Thus, the breeding of animals may constitute a nuisance, if carried on under such circumstances as to be peculiarly annoying to others. In determining whether the breeding of animals constitutes a nuisance, the location and manner in which it is performed must be considered."

From the foregoing we conclude that it is a question of fact to be judicially determined after hearing held, whether or not the keeping of animals within a certain location is a nuisance or not a nuisance, and that it cannot be arbitrarily stated by the borough council or the court that the keeping of five dogs is not a nuisance, while the keeping of six dogs is a nuisance. It may very possibly be under certain facts and circumstances that the keeping of less than six dogs would be a nuisance to the neighborhood, and that the manner of keeping them may be so unsanitary as to be detrimental to the public health, and therefore that the keeping of less than six dogs could be abated. We wish to point out that a public nuisance of the nature we are here concerned with may be abated in a number of different ways, if the facts are such as to warrant the abatement. A person who is annoyed by a public nuisance may have the same abated in equity by a bill to enjoin. This relief is usually granted by the court providing the facts are such as to warrant the relief. Under the General Borough Law by the Act of July 10, 1947, P. L. 1621, sec. 92, 53 PS §15205.1, establishing a board of health and fixing its powers and duties, it is specifically provided that the borough council may appoint a health officer and set up a board of health, who shall have the power, and whose duty it shall be to make inspections and proceed to abate any nuisances within the borough. It is specifically pro-

vided that the board of health as a body, or by committee, or by their health officer, together with their assistants, subordinates, and workmen, may at any time enter upon any premises in the borough upon which there is suspected to be any infectious or contagious disease, or nuisance detrimental to the public health, for the purpose of examining and abating the same. In the act it is also provided that:

"The board of health may inspect house drains, waste and soil-pipes, cesspools, water-closets, slaughter-houses, hog-pens, stables, stable-yards, and any conditions or places whatsoever, in the borough, which may constitute a nuisance or a menace to public health; and whenever any condition or place in the borough is found by the board to be a nuisance or a menace to the health of the people of the borough it shall issue a written order of abatement, directed to the owner, or agent of the owner, of the premises, stating that the conditions specified therein constitute a nuisance or a menace to health, and ordering an abatement thereof within such time as may be specified by them in such order. In case such order of abatement is not obeyed within the time specified therein, the board shall thereupon issue a further written order to the health officer, directing him to remove or abate the same; which order shall be executed by him and his subordinates and workmen, and the expense thereof shall be recoverable from the owner of the premises upon or from which the nuisance or menace to health is abated or removed, in the same manner as debts of like character are now collected by law; or the said board of health may proceed to enforce such other remedy, or inflict such penalty, as may be provided by ordinance of the borough."

In 39 Am. Jur. 347 and 348, it is stated:

"The question whether a dog constitutes a nuisance generally depends on the disposition and conduct of

the dog and the manner in which he is kept. It has been held that a dog is not a nuisance per se. . . .

"The barking, howling, and whining of dogs may constitute a nuisance and may be enjoined, where it results in serious annoyance to neighboring residents and interferes with the reasonable use and enjoyment of their property."

In the case of Frorer v. Gentzsch, 35 D. & C. 604, the court said: "We know of no case in Pennsylvania wherein . . . a dog kennel . . . has been held to be a nuisance per se."

Therefore, we conclude that the amendment to section 5 of the ordinance making the keeping of more than six dogs over the age of six months a nuisance per se is an unreasonable and arbitrary exercise of the police power of the borough council, and as such is illegal, invalid and void.

Since this matter came before the court on an appeal and hearing de novo was held and witnesses were heard, the prosecuting police officer testified that there were 11 dogs upon the premises of defendant over the age of six months, but that he did not observe any offensive odors, nor any unhealthy condition about the premises, nor did he hear the dogs making any loud or unusual noises, but that the prosecution was based solely upon the fact that defendant at the time had more than six dogs over the age of six months upon her premises.

Mr. Cooke testified as a neighbor that he was bothered by the dogs; that they did bark during the day and during the night; that in the summer time there is an offensive odor coming from defendant's premises, and that the keeping of these dogs upon defendant's premises is a great annoyance to both him and his wife. Likewise, Peter Machusak, a next door neighbor to defendant, testified that these dogs put up a howl day and night. He also testified that at times

he had counted as high as 28 dogs over one year old upon the premises of defendant, and that their barking day and night was a great annoyance to him. He also testified that the odor was not so bad in cold weather, but without cold weather there is considerable odor. Ralph Green, the health officer, testified that upon an inspection he found 11 dogs and two sets of puppies upon the premises of defendant; that the kennels were in fairly good condition and were as clean as you could expect for dog kennels. He testified that the dogs barked upon his arrival, but after he was there some time he heard no further barking.

Defendant then testified in her own behalf, stating that she kept her dogs in the kennels as clean as possible to keep them; that the dogs do not bark to any extent, and in her opinion they do not annoy the neighborhood. A neighbor of defendant, George Dietrick, testified that he lived about 150 feet away from defendant. He testified that he has never been annoyed by the barking of defendant's dogs, and that he has not ever smelled any offensive odor from the premises. Benjamin Kreitzer testified that he was hard of hearing and was not bothered by defendant's dogs from barking, and that he did not smell any offensive odors from the dogs. Mrs. Josephine Moser testified that she was a friend of defendant's and visited her place on many occasions; that the kennels were clean, there was no odor, and that the dogs did not bark to any extent during the time of her visits. Anna Weaver also testified that she worked for defendant, and that the kennels are kept in fairly good condition, and that the dogs do not bark unless someone goes through the alley and disturbs them.

As stated before, this being a criminal prosecution, the burden is on the Commonwealth to prove beyond a reasonable doubt the guilt of defendant, and since

we have declared the last paragraph of section 5 of the ordinance illegal and void, we have reviewed the testimony to determine whether or not the Commonwealth has met the burden to prove beyond a reasonable doubt that defendant violated that portion of section 5 of the ordinance which we have not declared illegal, which reads as follows:

"The keeping of noisy dogs or dogs that habitually bark at night is hereby declared to be a nuisance and a violation of this Ordinance."

Considering all the testimony in this case, it is our opinion that the prosecution has failed to prove that defendant is maintaining a nuisance and has violated that portion of the ordinance not declared invalid.

Whether the testimony submitted in this case gives a true and accurate picture of the conditions, we are not prepared to state. We have set forth above that a dog kennel and the keeping of dogs under certain circumstances might be a nuisance, and might violate the borough ordinance not declared invalid, but from the testimony submitted on this appeal, we are inclined to hold that the prosecution has failed to meet the burden, and we further are of the opinion that since this prosecution was based solely upon the fact that defendant had more than six dogs over the age of six months, and not based upon the proposition that the kennel was a public nuisance, that it is our duty to sustain the appeal.

This does not mean, however, that this case shall act to bar any further proceedings in the matter as above set forth and outlined, but we reiterate that to determine whether or not a nuisance exists, and whether or not it is such a nuisance as justifies its abatement is purely a question of fact that must be proven, and must be judicially determined from the testimony before the court hearing the same.

There is some conflict in the cases with respect to an ordinance relating to the number of animals kept. However, we are of the opinion that the better reasoned cases are to the effect that an ordinance of the kind here in question is invalid and unenforcible: 32 A. L. R. 1377; 45 L. R. A., N. S. 575.

As stated before, the question whether a dog constitutes a nuisance depends on the disposition and conduct of the dog or dogs, and the manner in which he or they are kept, and this question must be determined upon the facts of each particular case. Three or four dogs of a bad disposition that bark continually, and kept in an unsanitary way would, no doubt, be a nuisance that could be abated or enjoined, while, on the other hand, seven or eight dogs of a good disposition, that are not inclined to bark, and that are kept in a sanitary condition and do not annoy the neighborhood, might very well be held to be not a nuisance which could be abated or enjoined. The courts of Pennsylvania have entertained a suit to enjoin the keeping of a dog or dogs, and have held that plaintiff, under certain circumstances, was entitled to a decree requiring defendant to abate the nuisance caused by the dogs, or the manner in which they were kept: Hechelman v. Kindt, 22 Dist. R. 791.

## Decree

And now, to wit, December 7, 1950, the appeal of defendant is sustained; the judgment of the justice of the peace imposing a $10 fine and costs upon defendant is set aside, and the bond filed by defendant pending the disposition of the appeal is hereby discharged. The costs of this proceeding are placed upon Montour County.